# UNITED STATES DISTRICT COURT
# DISTRICT OF WYOMING

FILED
DISTRICT OF WYOMING
U.S. DISTRICT COURT

AUG 20 2018

U.S. MAGISTRATE JUDGE

| | |
|---|---|
| NATHAN HANSON, an individual, Plaintiff, vs. KEVIN SWAINSTON, an individual, Defendant, | Case No. 2:17-cv-00193-MLC |

## COURT'S OPINION ON THE COMMUNICATIONS BETWEEN DEFENDANT AND HIS INSURER

On June 27, 2018, this Court held an informal discovery conference with the parties regarding whether Defendant Kevin Swainston's communications with his insurance company were privileged, and if so, whether that privilege was waived [Doc. 20]. At the Court's request, Swainston briefed the issue on July 16, but did not file a motion for protective order [Doc. 21]. The briefing will be considered a motion for a protective order for purposes of this issue. Plaintiff Nathan Hanson responded to that briefing on July 23, 2018 [Doc. 23] and Swainston replied on July 30, 2018 [Doc. 28]. In the interim, Swainston moved for an in-camera inspection of a transcript, notes and emails detailing the conversations between Swainston and his insurer [Doc. 22]. This Court granted that Motion on August 14 for all communications between Swainston and his insurer during the relevant period [Doc. 30]. The court received and reviewed those documents on August 16, 2018.

1

## I. BACKGROUND

The matter arises out of an accident that occurred during October 2015 at a Teton County construction site [Doc. 1 ¶ 6]. Hanson was employed by Swainston through his company SCE Concrete and Excavation ("SCE"). *Id.* ¶¶ 3-4. Hanson alleges that Swainston ordered him to hold a cylinder while Hanson used a "rammer" to test the compaction of the material they were using to construct a wall. *Id.* ¶¶ 10-11. As Hanson held the cylinder, the rammer slipped, injuring both of Hanson's hands. *Id.* ¶ 11.

On May 19, 2016, Hanson notified SCE's insurer, Liberty Mutual of a potential claim arising from the above described event [Doc. 21 p. 4]. After consulting with Swainston, Liberty Mutual denied Hanson's claim, stating that because Hanson was a permanent employee under the insurance plan, he could not collect damages for injuries sustained during the scope of his employment [Doc. 23 p. 5]. Three months later, Liberty Mutual called Hanson's attorney and left a voicemail which, among other things, stated that Swainston told Liberty Mutual the accident was caused by Hanson attempting to answer his phone while he was holding the cylinder [Doc. 21 pp. 4-5]. Liberty Mutual later echoed the voicemail in an email to Hanson's counsel. *Id.* at 5. Hanson alleges his phone records contradict that a phone call precipitated his injury. *Id.* at 5-6.

Liberty Mutual received a phone call and email from Hanson on August 10, 2017 requesting a copy of Hanson's case file because he was "ready to pursue litigation" [Doc 23-5]. Liberty Mutual re-contacted Swainston for his version of the accident [Doc. 23 p. 5]. After speaking with Swainston, Liberty Mutual left another voicemail with Hanson, again saying that Swainston believed the phone call caused the accident.

On November 21, Hanson sued Swainston, but not SCE Concrete and Excavation, alleging Swainston was liable for reckless, willful, wanton and or/reprehensible conduct for ordering Hanson to hold the cylinder while he used the rammer [Doc. 1]. On May 31, Hanson deposed Swainston, who recalled that there was a ringing phone but was not sure whose phone or if it related to the events leading to Plaintiff's injuries. [Doc. 21 p. 6]. In addition, Swainston objected to questions about what he told Liberty Mutual, arguing those discussions were protected under attorney-client privilege. *Id.* This dispute over whether Swainston's communications were privileged led to the June 27 discovery conference, and now, the present dispute.

## II. ANALYSIS

### A. Privilege

Federal courts sitting in diversity apply state law regarding attorney-client privilege. *Frontier Refining v. Gorman-Rupp Co., Inc.*, 136 F.3d 695, 699 (10th Cir. 1998). This Court must look to Wyoming law to determine the scope of the attorney-client privilege.

*Thomas v. Harrison*, 634 P.2d 328 (Wyo. 1981) concerned the discovery of a written statement provided by a doctor to his malpractice liability insurer. Limited facts were provided, but the doctor last saw the patient on April 11, 1976, and the statements were given on February 23 & 24, 1977, or about 10 months after the doctor ended his treatment of the patient. The statements were "given to insurance carrier." *Id.* at 331. After determining that the documents were protected from disclosure under the work-product doctrine, the court proceeded to address the attorney-client privilege. In doing so the court relied upon the annotation, *Privilege of communications of reports between liability or indemnity insure and insured.* 22 A.L.R. 2d 659, and adopted the majority rule as follows:

> According to the weight of authority, a report or other communication made by an insured to his liability insurance company, concerning an event which may be made

3

the basis of a claim against him covered by the policy, is a privileged communication, as being between attorney and client, if the policy requires the company to defend him through its attorney, and the communication is intended for the information or assistance of the attorney in so defending him.

The *Thomas* court ultimately concluded that communications between the insured and the insurer were covered if they met the following criteria:

1. Were between an insured and their liability insurer;
2. Concerned an event which may be the basis of a covered claim;
3. The policy provides for a defense by an attorney; and
4. The communication is intended for the information or assistance of the defending attorney.

*Thomas v. Harrison*, 634 P.2d at 334. The party asserting the privilege – here, Swainston asserting attorney-client privilege– bears the burden of establishing all elements of the privilege. *Maint. Enterprises, Inc. v. Dyno Nobel, Inc.*, No. 08-CV-170-B, 2009 WL 10670683, at *4 (D. Wyo. Nov. 13, 2009).

Because the disputed communications were incontrovertibly between Swainston and his insurer, the first prong of *Thomas* is satisfied. Hanson, however, argues Swainston fails the second prong because some of the communications occurred after Liberty Mutual had denied Hanson's claim [Doc. 21 pp. 10-11]. Hanson is misunderstanding the nature of why the privilege exists. There is a relationship between an insured and its insurer which Wyoming has recognize as being of a nature which can give rise to an attorney-client privilege. Whether the insurer pays or denies a claim is irrelevant to the existing relationship between the insured and its insurer. Just because the insurer decides not to pay a claim does not mean that the claim ceases to exist and communications will cease between the insured and insurer. This is demonstrated clearly in this matter. Liberty Mutual denied to pay the claim to Hanson, but Hanson did not accept that decision and pursued the claim to litigation. A denial of claim does not terminate the relationship between the insured and its insurer.

4

*Thomas* hinges on whether the communication regarded what *may* be a covered event, not what had already been determined to be a covered event. Indeed, such communications are vital in determining whether an event was a covered claim or not Here, the record shows that Swainston's communications with Liberty Mutual occurred immediately following the claim's filing and again when Hanson alerted Liberty Mutual to imminent litigation. These communications are consistent with determining whether the October 2015 accident was a viable claim. Accordingly, Swainston has satisfied *Thomas'* second prong.

It is axiomatic, given that Liberty Mutual is defending Swainston, that *Thomas'* third prong is satisfied. Hanson disputes that Swainston meets *Thomas'* fourth prong, arguing that the information Swainston provided Liberty Mutual cannot be construed as intended for a defense attorney because by denying Hanson's claim, no defense attorney was needed [Doc. 21 pp. 10-12]. As noted above, a denial of a claim does not always obliviate the need for a defense attorney as demonstrated by this case. But the context of those communications – immediately following the claim's filing and immediately following Hanson's threat of litigation – suggest they were intended to assist the defending attorney. It would be ill-advised to hold that because Liberty Mutual initially declined to pay Hanson that the privilege detaches from their communications[1]. To do so could result in the insured being less forthcoming with their insurer, leaving the insurer with a diminished capacity to assess whether coverage is warranted.

Hanson points to this Court's order in *Caruso v. Stobart*, 1:17-cv-00026-SWS, to argue that there needs to be a clear showing of intent to use the provided information for litigation [Doc. 21 pp. 10-11]. But in *Caruso*, the Defendant who offered the information to his insurer was not

---

[1] From the information provided it is not clear if the initial claim by Hanson concerned a claim against SCE Concrete and Excavation or Mr. Swainston. From Liberty Mutual's response it seemed that it considered the claim to be as to SCE, rather than a co-employee claim.

involved in the actual collision and did so without solicitation and with no expectation that he would be involved in any claim or litigation. Thus, the *Caruso* Defendant provided statements when there was little reason to believe litigation was imminent. Here, Swainston's communications with his insurer were prompted by Hanson's notices that he intended to file a claim for damages. These notices provide the clear showing of intent that *Caruso* lacked.

Hanson cites two additional cases that are distinguishable from our present case. First, Hanson argues that under *Dixie Mfg. Co. v. Ricks*, 153 Ga. 364, 112 S.E. 370, (1922), when an "insurer has denied coverage ... the attorney remains only the insurer's attorney rather than also being the insured's attorney" [Doc. 21 p. 11]. A denial of coverage is different than a denial of a claim and this case is not relevant

Next, Hanson cites *Shere v. Marshall Field & Co.*, 26 Ill. App. 3d 728, 730, 327 N.E.2d 92, 93 (1974), where the Court held that an accident report provided by a store to an independent adjuster was not protected under attorney-client privilege [Doc. 21 p. 12]. But as Hanson concedes, the independent adjuster was not contractually obligated to defend the store. *Id.* Here, Swainston made the reports to Liberty Mutual, which was contractually obligated to defend him. *Shere* is factually different to our case.

Because Swainston has shown that his communications with Liberty Mutual were intended to assist in litigation, and the cases cited by Hanson do not lessen that showing, the Court finds that Swainston has satisfied *Thomas*' fourth prong. Because Swainston satisfied all four prongs, the Court holds that Swainston's communications with his insurer are protected by attorney-client privilege.

### B. Waiver

Having now determined that attorney-client privilege attaches to Swainston's communications with Liberty Mutual, the analysis shifts to whether that privilege has been waived.[2] When "a communication or document between a lawyer and client is disclosed to a third party the applicable privilege is waived and the communication or document is open to discovery." *Hedquist v. Patterson*, 215 F. Supp. 3d 1237, 1245–46 (D. Wyo. 2016), reconsideration denied, No. 14-CV-45-ABJ, 2016 WL 8453415 (D. Wyo. July 1, 2016). Under "Wyoming law, the privilege is lost if the communication itself is disclosed to a third party, whether the disclosure is inadvertent or intentional." *Figuly v. City of Douglas*, 853 F. Supp. 381, 388 (D. Wyo. 1994), aff'd, 76 F.3d 1137 (10th Cir. 1996). Swainston bears the burden to show he has not waived attorney client privilege. *See Maint. Enterprises, Inc. v. Dyno Nobel, Inc.*, No. 08-CV-170-B, 2009 WL 10670683, at *4 (D. Wyo. Nov. 13, 2009)("The asserting party must also establish all of the elements of the privilege, which includes establishing under Wyoming law that the privilege has not been waived.") Whether to waive attorney client privilege is a choice that "belongs solely to the client." *Teniente v. State of Wyoming*, 2007 WY 165, ¶ 47, 169 P.3d 512, 528 (Wyo. 2007).

Here, Liberty Mutual disclosed, through an email, phone calls and voicemails, contents of their conversations with Swainston regarding the accident. Liberty Mutual's characterization of Swainston's telling of the accident seems to vary in some degree from his subsequent deposition testimony, and Hanson seeks to use what Swainston told Liberty Mutual then to impeach Swainston now.

---

[2] There is a dearth of cases where the attorney-client privilege is applied in the insurance – insurer context. The Court sees no reason not to apply the attorney client privilege (and later, the work product doctrine) the same it would for an insurer as it would for the interactions between a client and their lawyer. If insurers are provided protection for conversations with their insured, they should uphold the same requirements to jealously guard those discussions from disclosure.

There is no Wyoming state law outlining the exact rules of when and how attorney-client privilege can be waived. *See Frontier Ref., Inc. v. Gorman-Rupp Co.*, 136 F.3d 695, 700 (10th Cir. 1998) ("The Wyoming Supreme Court has not directly announced a definitive test for waiver of attorney-client privilege."). Thus, the Court will look beyond Wyoming law to determine what test to employ.

The Tenth Circuit decision in *United States v. Bump*, 605 F.2d 548 (10th Cir. 1979) is particularly instructive for the present case. In *Bump*, the Defendant was criminally charged with conspiracy for his involvement in a marijuana smuggling scheme. *Id.* at 549. Bump told his attorney he had an alibi because hotel and credit card receipts proved he could not have been involved. *Id.* at 550. During Rule 16 disclosures, Bump's counsel told prosecutors that it planned to introduce those receipts at trial. *Id.* at 551. While undergoing cross examination at trial, the prosecutor asked Bump about his supposed receipts and alibi, which he had not mentioned during direct examination. *Id.* On appeal, Bump argued those questions violated his attorney client privilege because he had not authorized his attorney to disclose them to prosecutors. The Tenth Circuit concluded that the questions did not violate attorney-client privilege, holding that:

> Even if the privilege exists it is waived when the client voluntarily reveals the information to another or his attorney does so with his consent. See e. g., *In the Matter of Grand Jury Subpoena*, 438 F.Supp. 1176 (S.D.N.Y.1977); McCormick's Handbook of the Law of Evidence s 93 (2d ed. 1972).
>
> In this case Bump's attorney gave information acquired from his client to the government. Bump makes no showing that the lawyer's disclosures were without his consent, or that he communicated the information to the attorney with the intention it be kept secret. The burden of proving a communication is privileged is upon the person asserting the privilege. E. g., *United States v. Ponder*, 475 F.2d 37 (5th Cir. 1973). Therefore, we can find no violation of the attorney-client privilege unless we say either Fed.R.Crim.P. 16(b) unlawfully compelled the disclosure in violation of the attorney-client privilege,

8

> or that disclosures made under Rule 16(b) may not be used against
> a defendant in the circumstances of this case.

*Id.*

Here, Swainston provided information to Liberty Mutual that may mitigate his culpability in the accident – that it occurred because Hanson tried to answer his phone. That information was then provided by Liberty Mutual to Hanson as a portion of the justification for denying his claim. Swainston now "doesn't remember saying that" Hanson's phone ringing caused the accident [Doc. 21 p. 7].

Much like the Defendant in *Bump*, Swainston has made no showing that Liberty Mutual's disclosures to Hanson were without his consent, or that he communicated that their conversations must remain in confidence. Swainston argues that he alone had the authority to waive attorney-client privilege [Doc. 23 p. 8]. But under his contract with Liberty Mutual, he gave them the authority to "investigate, defend and settle the claims as [Liberty Mutual] deem[ed] expedient" [Doc. 28-1 p. 2]. By assenting to this authority, Swainston allowed Liberty Mutual to defend him however they saw fit – including disclosing conversations that Swainston did not explicitly say should be kept secret. It is admittedly a complicated situation. By extending the attorney-client privilege to communications between an insured and an insurer you have two parties to a communication who are not really trained or knowledgeable as to the nature and responsibilities of such communications. The insured is just speaking to his insurance company, and the insured is just gathering information which it can use to evaluate the claim. While this information may ultimately be provided to and used by an attorney to defend the claim, it may allow the insurer to resolve the claim without it proceeding to litigation and representation. As such the information provided by Swainston to Liberty Mutual was in accordance with the insurance contract and for the use of Liberty Mutual on behalf of Swainston to address a claim and potential litigation. Absent

some restraint expressed by Swainston, it is to be expected that the factual information he provided would be used by his insurer to his benefit. In fact, it appears that the insurer was using that information to contest the claim and deny liability on behalf of its insured. The privilege belongs to Swainston, but by providing factual information to his insurer it must be expected that the insurer will use that information in addressing the claim. It is further expected that such communications, regarding the events, would be conveyed to others in this process. As such, under the facts of this case, it would appear that Swainston impliedly waived any privilege as to his factual description of the event. It is at least clear that Swainston cannot meet his burden to show that no waiver exists.

Because this Court, has "broad discretion in deciding the appropriate scope of the waiver," the Court orders Swainston to provide Hanson with a copy of the June 23, 2016 interview transcript lines 1-127 and a copy of Hanson's September 8, 2017 email to Liberty Mutual, as both documents relate to the communications which were shared by Liberty Mutual. *Burning Rock Energy, LLC v. Pinnacle Gas Res., Inc.*, No. 06-CV-047-J, 2006 WL 8434641, at *3 (D. Wyo. Dec. 14, 2006).

### C. Work Product Doctrine

Finally, Swainston argues his communications with his insurer are trial preparation materials protected under the work-product doctrine [Doc. 23 pp. 8-10]. Under F.R.C.P. 26(b)(3)(A), "[o]rdinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." However, documents protected under the work product doctrine can be discovered if (1) there is a substantial need for the material, and (2) discovery is the only means to obtain the "substantial equivalent of the material" without undue hardship. *Logistiques Trans-W., Inc. v. Reynolds*, No. 08-CV-212-J,

2009 WL 10669566, at *2 (D. Wyo. Mar. 27, 2009). The burden is on Swainston to show the documents are protected by the work-product doctrine. *Resolution Trust Corp. v. Dabney*, 73 F.3d 262, 266 (10th Cir. 1995).

Hanson argues that work product does not apply to Swainston and Liberty Mutual's conversations because the conversations were business as usual and did not occur as preparation for litigation [Doc. 21 pp. 13-14]. Swainston must show "more than an anticipation of the possibility or likelihood of litigation before documents otherwise created in the ordinary course of business are considered work product." *Logistiques*, 2009 WL at *3. There must be a substantial likelihood that litigation is imminent, and not merely foreseeable. *Id.*

The Court need not address whether these communications fall within the work product doctrine. Even assuming they did, the privilege that attached was waived when Liberty Mutual disclosed the contents of the email to Hanson. *See United States v. Ary*, 518 F.3d 775, 783 (10th Cir. 2008) ("Courts will imply waiver when a party claiming the protection has voluntarily disclosed work product to a party not covered by the work-product doctrine.") Liberty Mutual disclosure of\ the contents of Swainston's factual description to Plaintiff's attorney acted as a waiver under the work-product doctrine.

IT IS HEREBY ORDERED THAT:

> Swainston provide Hanson a copy of the June 23, 2016 transcript through line 127 and a copy of his September 8, 2017 email to Liberty Mutual.

DATED this 20th day of August, 2018.

Mark L. Carman
United States Magistrate Judge